IN

# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

### JULY TERM, 1868, AT JEFFERSON CITY.

———◆◆◆———

WILLIAM SMITH, Respondent, v. R. B. OWENS, Appellant.

1. *Constitution — Military Officers — Pleas in Bar.* — The fourth section of art. 11 of the constitution of Missouri is a complete bar to actions or proceedings against any person acting by virtue of military authority vested in him by the government of the United States or of this State, on account of any act done by virtue of such authority. (Drehman v. Stifel, 41 Mo. 184, cited and affirmed.)

*Appeal from Third District Court.*

*Phelps,* for appellant.

I. Defendant, at the time the horse was claimed by plaintiff, was an officer on duty in the army of the United States, and was ordered by his superior officers not to give up the horse. He is, therefore, completely protected by said military orders. (Sec. 4, art. 11, Constitution, and sec. 2, Vacating Ordinance of Convention of Mo. 1865; Drehman v. Stifel, 41 Mo. 184.)

II. A person in the military service is not liable to a civil action for taking property for the use of the army by order of

(508)

Smith v. Owens.

his superior officers. The order of his superior officer is a complete protection, aside from the provision of the constitution. The inferior is not the judge of the necessity for the seizure.

*Baker & Ellis*, for respondent.

I. The government can do no wrong, and where its agent commits a tort it is the individual act of the agent. (Little v. Barrows, 2 Cranch, 176 ; Mitchell v. Hanway, 13 How. 128.)

II. This case does not come within the principle of the case of Drehman v. Stifel, 41 Mo. 184 ; for in this case the entire cause of action accrued before any order by a superior officer was given to the defendant, and the suit was pending before said order was given. It does not come within the provision of the constitutional protection to military officers, for the horse in controversy was purchased by the government, whose title or purchase is to be judged just as the title of any other purchaser.

WAGNER, Judge, delivered the opinion of the court.

Plaintiff brought his action in Greene Circuit Court for the recovery of specific personal property, to-wit : One sorrel horse, which, he alleged in his petition, belonged to him and was illegally detained and converted by the defendant. Defendant stated in his answer that at the time of the commencement of the action, and prior thereto, and after that date, he was assistant quartermaster of volunteers in the United States army, and that the said horse, in the petition mentioned, came into his hands and under his control as such quartermaster, in pursuance of the regulations of the army and the orders of his superior officers, while the defendant was in the active military service of the United States as such assistant quartermaster ; that the horse was branded "U. S."; that he had been captured from the enemy, or had otherwise come into the possession of the military authorities of the United States ; that the defendant received the horse as the property of the United States, in pursuance of the regulations of the army and the order of his superior officers, and detained the same until he died or was killed. The defendant then pleaded, as

33—VOL. XLII.

a bar to the action, the second section of the ordinance of the convention of this State, entitled "An ordinance providing for the vacating of certain civil officers of the State, filling the same anew, and protecting the citizens from injuries and harassment;" and also the fourth section of the eleventh article of the constitution.

On the trial the plaintiff introduced testimony showing that the horse in controversy was his property; that he was the owner and in possession of the said horse in the month of September, 1863; and that the horse was stolen or taken from the plaintiff without his consent, leave, or knowledge, by some person or persons unknown, and that he was not seen again until the month of November, 1864, when he was found among some horses belonging to the United States army, in possession of the defendant, as quartermaster for the district of Southwest Missouri.

The defendant proved that the horse in question was obtained by Captain Montgomery from the quartermaster of the Second Missouri Artillery volunteer regiment, on a requisition signed by him, for the use of the men under his command, he then being in command of a company in said last-named regiment; that some men in his company deserted with their horses, and that one of them deserted with the horse in controversy; that the deserters were arrested, and that the horse in question, together with another horse, was, by the provost marshal at the post of Springfield, turned over to defendant, as quartermaster, who gave his receipt for the same; that at the time the said Montgomery drew said horse he was branded on the left shoulder and left hip with the letters "U. S.," indicating that the said horse had been purchased for the use of the army.

It was further testified that the commander of the post, by order of the district commander, ordered the defendant not to deliver the horse to the plaintiff, and not to permit the sheriff, who had the writ in this case in his hands, to execute the same; and that by virtue of an order issued by the provost marshal the horse was placed in the stockade prison, where he was subsequently killed.

At the request of the defendant, the court instructed the jury

Smith v. Owens.

that, if they believed from the evidence that the horse in question came into the possession of the defendant as quartermaster of United States volunteers, by act of the military authorities of the United States, and that the military authorities, before the commencement of this suit, ordered the defendant, as such quartermaster, to retain said horse in his possession, and defendant did so retain the same, then the jury should find for defendant. The court refused all the instructions asked for by plaintiff; and the jury having found a verdict for defendant, judgment was rendered thereon in his favor. The case being carried to the District Court, the judgment of the lower court was reversed and the cause remanded, from which decision an appeal was taken to this court.

The instruction given for the defendant is based on the theory that the case falls within the indemnity granted by the second section of the ordinance commonly known as the vacating ordinance, which was afterward inserted in the constitution. (§ 4, art. 11, Const. of Mo.) Had there been no such constitutional provision, the instructions asked for by the plaintiff and refused by the court would have been unobjectionable. But they were rightfully refused, because they ignored wholly the provisions of the constitution and the ordinance.

The case comes within the meaning, spirit, and letter of the sections above referred to ; and the instruction given by the court, on which the verdict was rendered, was, we think, unquestionably correct. The defendant committed the act of retaining the property by virtue of orders from his superior officer in command, who was vested with authority by the government to judge of the exigencies of the service. It is unnecessary to go into a re-discussion of the principles and the proper interpretation to be given to the subject, as the whole matter was most elaborately considered by this court in the case of Drehman v. Stifel, 41 Mo. 184. While the two cases are not parallel or analogous in all particulars, yet the reasoning and principles laid down in Drehman's case must have a controlling and decisive influence here.

The result is, the judgment of the District Court must be reversed and that of the lower court affirmed.